### JAMES N. BOYD *v.* LANGHORN TABB.

[Abstract Kentucky Law Reporter, Vol. 7—225.]

**Dissolution of Partnership.**

> Where a partner in active charge of the partnership business ceases to conduct the business, the other partners acquiescing in it, and the partner publishes a notice that the partnership is dissolved and no one of the partners questions the fact, at least such partner giving the notice is estopped thereafter to deny that a dissolution of that firm did take place.

**Existence of a Partnership.**

> One can not claim to be a partner in a business as between the partners when he can not show that he ever agreed to become a partner or to be responsible or in any way connected with the business as a copartner, and the fact that he owned an undivided interest in the real estate of the firm will not make him a partner in the business in the absence of an agreement to become such partner.

### APPEAL FROM MASON CIRCUIT COURT.

September 24, 1885.

OPINION BY JUDGE LEWIS:

In 1866, appellee, Langhorn Tabb, sold to appellant, Burnett, an undivided eighth interest in a parcel of land and steam flour and woolen mills situated thereon. On August 1, 1867, the latter sold the same to appellant, Boyd, the whole consideration therefor being paid, except $737.67, for which he gave his note payable to Tabb, Burnett also becoming bound.

This action was commenced to recover on the note, but Boyd alone makes defense, alleging that Burnett was bound as his surety merely.

It appears that when Boyd purchased there were various other joint owners of the property including appellee, W. E. Tabb, and the mills were operated by them under the firm name of W. E. Tabb & Co. until about 1871, when they ceased to carry on business, and the mills were idle until May, 1873, at which time W. E. Tabb and Langhorn Tabb, who had again become the owners of the eighth interest, took possession of the property, carried on the

business until June, 1875, when the buildings, machinery and other property connected with the business were consumed by fire.

A short time before they took possession in May, 1873, W. E. Tabb become the owner of four-eighths in addition to the one he already owned, and the other three-eighths were owned by Langhorn Tabb, H. G. Tabb and appellant, Boyd. But it does not appear that the last two named had anything whatever to do with the business after 1871.

Since the destruction of the buildings by fire, Langhorn and W. E. Tabb have collected and, as they allege, appropriated to the payment of debts due by the firm, about $21,000 on a policy of insurance. And in his answer which is made a counterclaim against Langhorn and cross-petition against W. E. Tabb, appellant, Boyd, seeks to set off the note sued on by his alleged ratable share of the insurance money and of the rent of the property from May, 1873, to June, 1875.

The main question, therefore, is whether he is to be held as a co-partner in the business during that period, entitled as such to whatever profits may have accrued and responsible for all losses in the business.

In our opinion this is a question of very little difficulty either as to the facts or the legal rights and responsibilities arising thereupon.

Sometime after Boyd purchased an interest in the property and business, W. E. Tabb, who seems from the beginning to have had the chief control, disposed of an eighth interest to each of four persons, none of whom had any capital, but were taken in as co-partners principally on account of their knowledge of and skill in the business.

For the alleged reasons these partners were not able to pay up their due portion of the capital, W. E. Tabb, against the wish of a majority, if not all of the other partners, as we think the evidence shows, stopped the mills in 1871. And in April, 1872, published in a newspaper the following advertisement: "I hereby give notice that I have withdrawn from the firm of W. E. Tabb & Co., heretofore engaged in the manufacture of flour and woolen goods at their mills in Dover, Mason County, Kentucky, and that said firm is dissolved as far as I am concerned, and that I will not be responsible for any debts or liabilities created by the firm or any of

its members from and after this date.   This 17th day of April,
1872.   W. E. Tabb."

If this notice meant anything, or was effectual, for any purpose,
it indicates a dissolution of the old firm of W. E. Tabb & Co. so
far as W. E. Tabb was concerned, and as the other members of the
firm had submitted to stopping the mills and made no effort there-
after to carry on the business of the firm, or in any way to use or
control its property and effects as members of it, but left the whole
in the possession and under the control of W. E. Tabb, the legal
conclusion is, or at least, he is estopped to deny that a dissolution
of that firm did take place and that when W. E. Tabb and Lang-
horn Tabb commenced the business in May, 1875, the old firm had
ceased to exist.

It seems to us, therefore, that in order to make Boyd a co-
partner in the new business and a member of the new firm, there
should be evidence of his express agreement to become so, or some
facts shown from which such agreement might reasonably be
implied.

It is true the two members of the new firm, W. E. and Langhorn
Tabb, assumed the original firm name of W. E. Tabb & Co., but
that was done upon their own motion and without consulting with
or obtaining the consent of Boyd.

The only conversation on the subject recommencing the business
which either W. E. Tabb or Langhorn had with Boyd occurred
between him and the first named.   In that conversation W. E. Tabb
informed Boyd that it would require almost $12,000 to start and
operate the business, and that his share would be $1,200, to which
Boyd replied that he had put every dollar he intended to in that
factory and declined to raise any more for that purpose.

This conversation we regard as conclusive of Boyd's refusal to
become a member of the new firm, or to be connected with the
business in which the other two intended to engage.

It also shows that the stock, materials and resources of the old
firm were exhausted, and nothing was left of its assets.   For the
proof is that it required only four or five hundred dollars to put
the mill and machinery in running order, and the residue of the
$12,000 was to be expended in the purchase of stock, all of which
belonging to the old firm had been disposed of.

There is no evidence showing or tending to show that Boyd ever

38

agreed to become a member of the new firm or to be responsible or in any way be connected with the business as a copartner. It is true he still remained a joint owner of the property, but of that no act of the other owners could deprive him. But, as we have before said, the original firm of W. E. Tabb & Co. created to carry on the business of operating the mills, had been dissolved principally by the act of W. E. Tabb, and Boyd could not be forced against his will to become a member of the new firm.

It appears that just before the renewal of operations by W. E. and Langhorn Tabb, the latter purchased an interest in the property and the former purchased firm interest resulting in one of the original owners of the property retiring, and that Boyd gave his written consent to the change of ownership. But this did not amount to an agreement on his part to become a member of the new firm and to advance any money in order to carry on its business.

Counsel contends that by a proper construction of his pleading filed in this case, Boyd asked a settlement upon the basis that he was a partner during the entire time.

We do not agree that his answer precludes him from insisting upon a settlement upon a different basis.

In his answer he stated the facts, and asked the court to determine as a question of law, whether he was or was not to be held as a partner from May, 1873, to June, 1875, and sought a settlement upon that basis only in case he should be so held.

In our opinion, the lower court erred in adjudging him to be a partner in the new firm and the judgment must be, therefore, reversed.

We are satisfied that W. E. and Langhorn Tabb should be required to account to the other joint owners of the property for a reasonable rent from May, 1873, to June, 1875, and equally clear that the insurance money received by them should also be accounted for and paid for the use of all joint owners. Having taken possession of the property they should be regarded as holding it in trust for the benefit of all the owners, and the accruing rent from the property in their hands was more than sufficient to pay the premiums on the policy of insurance.

Upon the return of the case the amount of the debts of the old firm of W. E. Tabb & Co. existing previous to May, 1873, should

be ascertained and the reasonable rent from the property while used by W. E. Tabb and Langhorn Tabb from May, 1873, until it was burned and also the amount of insurance money collected, less the amount of premiums paid by them should be applied first to the payment of such debts and interest, and whatever may be left must be paid to the joint owners of the property including appellant Boyd.

Judgment *reversed*.

*Wadsworth & Sons, T. A. Curran, for appellants.*
*Barbour & Cochran, for appellees.*